UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ETHAN E. BICKELHAUPT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 9598 |
| | ) | |
| KATHLEEN SEBELIUS, *in her official* | ) | Judge Sara L. Ellis |
| *capacity as Secretary of the U.S. Department* | ) | |
| *of Health and Human Services,* and | ) | |
| DAVID LEVINSON, *in his official capacity* | ) | |
| *as Inspector General of the U.S. Department* | ) | |
| *of Health and Human Services,* | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff, Ethan Bickelhaupt, a physician, brings this action to challenge his five year exclusion from receiving reimbursements from government health care programs. After his 2010 felony drug conviction, Bickelhaupt was excluded from government health care programs by Defendants David Levinson, Inspector General of the U.S. Department of Health and Human Services, and Kathleen Sebelius, Secretary of Health and Human Services (collectively, the "Department"). Bickelhaupt unsuccessfully opposed his exclusion before an administrative law judge ("ALJ") and an appeals board. Bickelhaupt contends that his exclusion from government health care programs is illegal because it violates: the constitutional protection against double jeopardy, the Administrative Procedures Act ("APA"), the equal protection clause, and the Rehabilitation Act. Now before the Court are cross-motions for summary judgment, brought by both Bickelhaupt [28] and the Department [41]. The Court denies Bickelhaupt's motion and grants the Department's motion because Bickelhaupt's exclusion does not constitute double jeopardy as it is merely a civil penalty, the Department did not violate the APA in interpreting

the scope of exclusion, his exclusion is rationally related to a legitimate government interest, and the Rehabilitation Act does not bar exclusion where Bickelhaupt engaged in illegal conduct separate and apart from his addiction.

## BACKGROUND[1]

Bickelhaupt is a physician who has held board certifications in psychiatry, pain medicine, and addiction medicine, among others. Some time before September of 2007 and while practicing as a physician, Bickelhaupt developed polysubstance dependence. In September of 2007, Bickelhaupt sought and underwent treatment for his drug addiction. In August of 2009, Bickelhaupt was indicted in the District of Kansas on six felony drug counts. In September of 2010, Bickelhaupt pleaded guilty to two counts: knowingly and intentionally dispensing a controlled substance outside the scope of professional practice and for no legitimate medical purpose, in violation of 21 USC § 841(a)(1) and (b)(1)(C) (Count I), and knowingly and intentionally obtaining and acquiring a controlled substance by misrepresentation, fraud, deception, and subterfuge via a fraudulent prescription in violation of 21 U.S.C. § 843(a)(3) and (d) (Count VI). Bickelhaupt was sentenced to three years' probation, 300 hours of community service, a three year prohibition from practicing medicine, and a $200 fine.

On August 31, 2011, Bickelhaupt received a letter from the Department of Health and Human Services, Office of the Inspector General, notifying him that he had been excluded from participating in Medicare, Medicaid, and all other federal health care programs for five years pursuant to § 1128(a)(4) of the Social Security Act, 42 U.S.C. § 1320a-7(a)(4). An attachment to the exclusion letter states:

> No payment will be made by any Federal health care program (such as Medicare, Medicaid, Veterans Administration, TRICARE, etc.) for any items or services

---

[1] The facts set forth in this section are derived from Bickelhaupt's Local Rule 56.1 statement of fact [34], and the Department's response thereto [43], as well as the administrative record [12].

2

> furnished, ordered, or prescribed by you in any capacity. For example, you are prohibited from submitting or causing claims to be submitted to Federal health care programs for items or services which you provide, and you are also prohibited from being employed to provide items or services which are billed to a Federal health care program. Such items or services could include administrative, clerical, and other activities that do not directly involve patient care or the provision of any health care related services.
>
> An excluded person cannot be employed by a provider to perform functions paid for, in whole or in part, by any Federal health care program. Generally speaking, with rare exceptions, you may not be employed by a hospital, nursing home, or any other institutional provider that participates in Federal health care programs.

Doc. 34 ¶ 15.

The letter further states that Bickelhaupt could challenge his exclusion by requesting a hearing before an ALJ. Bickelhaupt challenged his exclusion before an ALJ on the grounds that it violated the double jeopardy clause, the equal protection clause, the APA, and the Rehabilitation Act. The ALJ's scope of review was limited to whether there was a basis for exclusion and whether the length of the exclusion was unreasonable. Bickelhaupt conceded these points and the ALJ granted summary judgment in favor of the Department of Health and Human Services.

Bickelhaupt then sought review of the ALJ's decision by the Departmental Appeals Board ("DAB"). Bickelhaupt again argued that his exclusion violated the double jeopardy clause, the equal protection clause, the APA, and the Rehabilitation Act. The DAB held that "[t]he ALJ did not err in refusing to entertain [Bickelhaupt's] challenges to section 1128(a)(4) and the I.G.'s actions, and in any event those challenges are meritless." Doc. 12-2 at 10. Bickelhaupt brings this case to appeal the DAB's ruling.

## LEGAL STANDARD

The scope of judicial review of the DAB's decision is set forth in 42 U.S.C. § 405(g). The DAB's findings of fact are conclusive so long as they are "supported by substantial

evidence." 42 U.S.C. § 405(g); *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006). "The court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). But the Court is not bound to accept the DAB's conclusions of law. *Kuebler v. Sec'y of U.S. Dep't of Health & Human Servs.*, 579 F. Supp. 1436, 1438 (E.D.N.Y. 1984); *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976). Instead, the Court reviews conclusions of law *de novo*. *Prochaska*, 454 F.3d at 734.

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering Bickelhaupt's motion for summary judgment, the Court views all facts in the light most favorable to the Department; and when considering the Department's motion, the Court views all evidence in the light most favorable to Bickelhaupt. *See id*.

## ANALYSIS

Bickelhaupt raises four purely legal claims that his exclusion from government health care programs is illegal. First, he contends that exclusion violates the double jeopardy clause

because he has already been punished for his crimes. Second, Bickelhaupt asserts that the terms outlined in his notice of exclusion impermissibly expand the definition of exclusion in violation of the APA. Next, he argues that his exclusion violates the equal protection clause of the Fifth Amendment because it is overly broad and not rationally related to a legitimate governmental purpose. Finally, Bickelhaupt alleges that his exclusion violates the Rehabilitation Act because it denies him access to payment from government health care programs solely as a result of his medical disease of addiction. The Court finds that none of these claims has merit and therefore grants summary judgment in favor of the Department.

## I. Double Jeopardy

Bickelhaupt first argues that his exclusion from government health care programs violates the double jeopardy clause of the Fifth Amendment. Double jeopardy protects an individual from the danger of being punished twice for the same conduct. *Witte v. United States*, 515 U.S. 389, 395, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995). But, "the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98–99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (internal quotation marks omitted). To determine whether double jeopardy applies, the Court must determine whether the proposed penalty is civil or criminal in nature. *Id.* at 99. Generally speaking, a civil penalty does not implicate the double jeopardy clause unless it is so punitive as to transform it into a criminal punishment. *Id*. To determine whether a penalty is civil or criminal, the Court must begin by analyzing the statute delineating the penalty. *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 82 L. Ed. 917 (1938). In drafting § 1128 of the Social Security Act, Congress delegated authority to the Inspector General to exclude people and entities from health care programs. 42 U.S.C. § 1320a-7. As Bickelhaupt

acknowledges, this delegation of authority is *prima facie* evidence that Congress intended for exclusion to be a civil penalty. *Hudson*, 522 U.S. at 103 ("That such authority was conferred upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction."); Doc. 33 at 5. But Bickelhaupt contends that other evidence tends to show that Congress intended for exclusion from health care programs to be punitive. The Court disagrees.

Bickelhaupt relies primarily on a Committee Report, which states that one of the reasons for enacting the exclusion penalty was to deter wrongdoing in order to protect government health care programs. 104th Cong., House Rep. 104-496, § 211. Bickelhaupt reasons that because deterrence is a traditional goal of criminal punishment, Congress intended for the exclusion penalty to be punitive. Bickelhaupt also contends that the seven factors identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), make clear that § 1320a-7(a)(4) "serve[s] as a criminal punishment in purpose and effect." Doc. 33 at 9. The *Kennedy* factors are intended to determine whether a statute is punitive or civil in character. *Id.* at 168. While *Kennedy* offers guideposts, it does not consider whether exclusion from government health care programs constitutes criminal punishment.

Notably, Bickelhaupt's lengthy discussion of double jeopardy does not cite any case holding that exclusion from a government health care program is so punitive as to implicate double jeopardy. In fact, several cases stand for the opposite proposition—that exclusion from government health care programs does not violate the double jeopardy clause. *See Crawford v. Sullivan*, No. 92 C 3926, 1993 WL 122294, at *3 (N.D. Ill. Jan. 28, 1993) ("Accordingly, we find that the plaintiff's exclusion under § 1320a-7a does not violate the double jeopardy or *ex post facto* clauses of the United States Constitution."), *report & recommendation adopted*, 1993 WL 75117 (N.D. Ill. Mar. 16, 1993); *Patel v. Thompson*, 319 F.3d 1317, 1319 (11th Cir. 2003)

("[E]xclusionary periods provided by the statute 42 U.S.C. § 1320a-7 are remedial, not punitive."); *Erickson v. U.S. ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 864 (9th Cir. 1995) ("[T]he mandatory exclusion provision of 42 U.S.C. § 1320a-7 is not punitive, but rather remedial in nature and purpose."); *Harkonen v. Sebelius*, No. C 13-0071 PJH, 2013 WL 5734918, at *13 (N.D. Cal. Oct. 22, 2013) ("The court finds that the Double Jeopardy Clause does not preclude application of the exclusion. Section 1128(a)'s statutory scheme is not so punitive in purpose or effect so as to transform what was clearly intended as a civil remedy into a criminal penalty."); *Greene v. Sullivan*, 731 F. Supp. 838, 840 (E.D. Tenn. 1990) (holding that exclusion from government health care programs, like revocation of a professional license, does not violate the double jeopardy clause).

The Court finds, as other courts within this district and around the country have found, that § 1320a-7(a)(4) was intended to be, and operates in practice as, a civil penalty. Bickelhaupt's exclusion from federal health care programs following his conviction does not violate the double jeopardy clause of the Fifth Amendment.

## II. Administrative Procedures Act

Bickelhaupt next relies on the APA, which requires administrative agencies to publish in the Federal Register "substantive rules of general applicability . . . and statements of general policy or interpretations of general applicability formulated and adopted by the agency," 5 U.S.C. § 552(a)(1)(D), and "each amendment, revision, or repeal of the foregoing," 5 U.S.C. § 552(a)(1)(E). Bickelhaupt contends that the Department violated this requirement by expanding the definition of "exclusion" in an attachment to the August 31, 2011 exclusion letter. *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997) ("Once an

agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking.").

The Department responds that it did not violate the APA's notice and comment procedures because those procedures apply only to "legislative rules." *Lincoln v. Vigil*, 508 U.S. 182, 196, 113 S. Ct. 2024, 124 L. Ed. 2d 101 (1993). The Department asserts that the contents of the letter and attachment are, at most, "interpretive rules," for which notice and comment is not necessary. 5 U.S.C. § 553(b)(3)(A). The Seventh Circuit has held that an agency is not required to follow notice and comment procedures before sending a letter to an individual announcing the agency's interpretation of a statute. *Metro. Sch. Dist. of Wayne Twp., Marion County, Ind. v. Davila*, 969 F.2d 485, 488–89 (7th Cir. 1992) ("Based upon our review of Davila's letter and controlling authority, we conclude that the letter announced [the agency's] construction of the [statute], and hence is an interpretive rule that does not trigger the APA's notice and comment requirements."). "[I]nterpretive rules are statements as to what the administrative officer thinks the statute or regulation means, whereas legislative rules have effects *completely independent* of the statute." *Id.* at 490 (quoting *Cabais v. Egger*, 690 F.2d 234, 238 & n.9 (D.C. Cir. 1982)). Unlike interpretive rules, legislative rules are "as binding upon the courts as congressional enactments." *Davila*, 969 F.2d at 490. Additionally, an interpretive rule may "transform a vague statutory duty or right into a sharply delineated duty or right" and "does not have to parrot statutory or regulatory language but may have the *effect* of creating new duties." *Cent. Tex. Tel. Co-op., Inc. v. F.C.C.*, 402 F.3d 205, 214 (D.C. Cir. 2005) (internal quotation marks omitted).

Determining whether a statement constitutes an interpretive or legislative rule begins with examining the agency's characterization of the rule. *Id.* (citing *Gen. Motors Corp. v. Rucklehaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984)). Here, the Department does not formally

8

characterize the letter in one way or another. But the use of such terms as, "[g]enerally speaking, with rare exceptions," "for example," and "[s]uch items or services could include," Doc. 34 ¶ 15, indicate that the Department did not intend for the information in the letter to constitute legislative rulemaking that would have the same effect as a statute. Rather, these statements indicate that the letter merely sets out what the Department thinks "exclusion" means. *See Davila*, 969 F.2d at 490.

Bickelhaupt contends that the attachment to the exclusion letter affects his individual rights and obligations by expanding on the definition of exclusion, and therefore constitutes a legislative rule. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979). But the Court disagrees. Even though the description of the impact of exclusion in the letter may expand on the brief definition of exclusion in 42 CFR § 1001.2, interpretive rules need not exactly repeat regulatory language, *Cent. Tex. Tel. Co-op., Inc.*, 402 F.3d at 214, but may instead explain the agency's interpretation of the regulation, *Davila*, 969 F.2d at 490.

Therefore, the Court finds that the statements in the August 31, 2011 letter and attachment are not legislative rules and are not subject to the procedures for legislative rules outlined in the APA. To the extent that the content of the letter constitutes a rule, it is an interpretive rule, as it merely sets out the Department's understanding of what exclusion entails. *Davila*, 969 F.2d at 490.

## III. Equal Protection Clause

Bickelhaupt next asserts that his exclusion from government health care programs violates the equal protection clause of the Fifth Amendment. Because the statute excludes from government health care programs anyone who has been convicted of a felony "relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance," 42

9

U.S.C. § 1320a-7(a)(4), Bickelhaupt contends that the statute is not rationally related to a legitimate governmental purpose. *See Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). Bickelhaupt alleges that the classification is over-inclusive and "does not advance the governmental purpose of protecting Medicare, Medicaid, and all other Federal health care programs, and their beneficiaries, from fraud and abuse." Doc. 33 at 26–27. Apparently misunderstanding the rational basis standard, *Jimenez v. Richardson*, 353 F. Supp. 1356, 1359 (N.D. Ill. 1973), Bickelhaupt asserts that "there are many less restrictive means and classifications the government could employ to protect the federal health care systems," and therefore his exclusion is not rationally related to a legitimate government interest. *Id.* at 27. The Court disagrees.

Courts in other circuits have found that exclusion from government health care programs is rationally related to a legitimate government interest. *See Harkonen*, 2013 WL 5734918, at *16 ("The exclusion is rationally related to the government's interests in deterring fraud in the delivery of health care and health care items and services, and in protecting federal health care programs and their beneficiaries from individuals who have behaved in an untrustworthy manner."); *Manocchio v. Sullivan*, 768 F. Supp. 814, 817 (S.D. Fla. 1991) (finding that exclusion is rationally related to the government's goal), *aff'd sub nom. Manocchio v. Kusserow*, 961 F.2d 1539 (11th Cir. 1992).

In another context, the Seventh Circuit held that 21 U.S.C. § 862a, which excludes individuals convicted of drug felonies from receiving benefits under the food stamp program, did not violate the equal protection clause. *Turner v. Glickman*, 207 F.3d 419, 425 (7th Cir. 2000) The Seventh Circuit stated that "[i]t was not irrational for Congress to conclude that the disqualification of drug felons from receiving certain kinds of federal aid under Section 862a

10

would deter drug use among the population eligible to receive that aid. This is all that is required to sustain a classification in the face of an equal protection challenge when the challenged classification is subject to rational basis review." *Id*.

The record reveals that Bickelhaupt wrote prescriptions for controlled substances to individuals who were not his patients. Doc. 12-6 at 68. Bickelhaupt also paid non-patients to fill prescriptions at local pharmacies and bring the drugs to him for his personal consumption. *Id.* at 69. Bickelhaupt also shared prescription drugs like Aderall with guests at parties he hosted in his home. *Id*. Bickelhaupt pleaded guilty to obtaining a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge. *Id.* at 67. In light of his conduct, the Court finds that it was not irrational for the Department to exclude Bickelhaupt from receiving reimbursements from government health care programs. The Department may wish to prevent future fraud against government health care programs, and excluding Bickelhaupt from participating in those programs is a rational means to achieve that goal. *Harkonen*, 2013 WL 5734918, at *16.

## IV. Rehabilitation Act

Finally, Bickelhaupt alleges that his exclusion from government health care programs violates the Rehabilitation Act. The Rehabilitation Act outlines that, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in . . . any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Bickelhaupt asserts that he has been excluded from government health care programs solely as a result of his drug addiction.

Bickelhaupt relies primarily on the decision in *Teahan v. Metro-North Commuter Railroad Co.*, 951 F.2d 511 (2d Cir. 1991). In *Teahan*, a commuter railroad employee was fired for excessive absenteeism. *Id.* at 513. The employee sued, alleging that his drug and alcohol

11

addictions caused his absenteeism and therefore his termination violated the Rehabilitation Act. *Id.* at 515. The district court granted summary judgment for the employer, but the Second Circuit reversed, holding that a question of fact existed with regard to whether the plaintiff's absenteeism was caused solely by his addictions. *Id.* at 517. Bickelhaupt asserts that his conduct was caused solely by his addiction and therefore his exclusion from federal health care programs violates the Rehabilitation Act.

However, other circuits have disagreed with *Teahan* by distinguishing between an individual's conduct and his addiction. *See Maddox v. Univ. of Tenn.*, 62 F.3d 843, 847 (6th Cir. 1995) (explicitly rejecting *Teahan*, holding that "the district court correctly focused on the distinction between discharging someone for unacceptable misconduct and discharging someone because of the disability"), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012); *Taub v. Frank*, 957 F.2d 8, 11 (1st Cir. 1992) (noting that the plaintiff, a postal worker, was dismissed not solely as a result of his addiction, but because of his criminal drug conduct); *Little v. F.B.I.*, 1 F.3d 255, 259 (4th Cir. 1993) (affirming dismissal of plaintiff's Rehabilitation Act claim where he was fired for being drunk on duty, distinguishing between plaintiff's alcoholism and his misconduct).

Moreover, Bickelhaupt's claim also fails because he has not demonstrated that but for his addiction, he was "otherwise qualified" to participate in the program. *See* 29 U.S.C. § 794(a). Here, Bickelhaupt did not merely take drugs, but also obtained drugs by misrepresentation and distributed drugs to non-patients for recreational use, both in violation of federal law. Similarly, in *Taub*, the First Circuit found that the plaintiff's claim failed partly because he did not merely take drugs but "possess[ed] heroin for *distribution*." *Taub*, 957 F.2d at 11. Likewise, in *Copeland v. Philadelphia Police Department*, the Third Circuit affirmed summary judgment

against the plaintiff, a police officer who was terminated because of his drug addiction. 840 F.2d 1139, 1149 (3d Cir. 1988). The court rejected the plaintiff's Rehabilitation Act arguments, holding that he was not otherwise qualified to serve as a police officer because accommodating a drug addict within the police force would require a "'substantial modification' of the essential functions of the police department and would cast doubt upon the integrity of the police force." *Id.*

The Court therefore rejects Bickelhaupt's claim that his exclusion from government health care programs violates the Rehabilitation Act. The Court grants summary judgment to the Department on this claim and all other claims asserted by Bickelhaupt.

## CONCLUSION

For the foregoing reasons, the Court grants the Department's motion for summary judgment [41], and denies Bickelhaupt's motion for summary judgment [28].

Dated: May 29, 2014

_____
SARA L. ELLIS
United States District Judge